# Rice v. Klette, et al.

(Decided October 10, 1912.)

Appeal from Kenton Circuit Court
(Common Law and Equity Division).

Wills—Construction—Devise to a Son and His Children—Life Estate —Joint Estate in Fee Simple.—A devise by a father to his son, "George D. Klette and to his children at the death of my wife Sarah Klette, the one-half of the fifty acres herein willed to her during her life, and it is my will that the said fifty acres at the death of my wife, be so divided that George D. Klette and his children will get the twenty-five acres herein willed to them," held to create a joint estate in George D. Klette and his children in fee simple, in view of the fact that the testator devised in terms four different life estates by the same will, thus showing that he knew exactly what language to employ for that purpose, and in view of the further fact that the will directed that the fifty acres, at the death of testator's wife, be so divided that George D. Klette and his children should get the twenty-five acres willed to them.

ROBERT C. SIMMONS for appellant.

STEPHENS L. BLAKELEY, JOHN H. KLETTE for appellees.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Reversing.

This appeal involves the construction of the seventh clause of the will of Asa G. Klette, who died several years ago a resident of Kenton County, Kentucky. Sometime after the death of Asa G. Klette, George D. Klette, his son, died, leaving two children, Jarvis Klette and Fred Klette. By his will, which was duly probated in Kenton County, Kentucky, George D. Klette devised all of his estate to his sister, Sarah Ann Rice, giving as a reason therefor that she had cared for him during his last illness. This action was brought by plainitffs, Jarvis Klette and Fred Klette, against defendant, Sarah Ann Rice, for the purpose of determining their respective interests in a tract of about 25 acres of land, which was formerly a part of the 50-acre tract of land owned by Asa G. Klette, and disposed of by the following provision of his will:

"Seventh. I also will and bequeath to my said son George D. Klette and to his children, at the death of my

wife, Sarah Klette, the one-half of the 50 acres herein willed to her during her life, and it is my will that the said 50 acres at the death of my wife, be so divided that George D. Klette and his children will get the 25 acres herein willed to them and I further will and give to my said son, George D. Klette in his own right one-third part of a lot which I now own in the town of South Covington, Kenton County, Kentucky. Said lot fronts on Bank-lick Turnpike Road one hundred feet and runs back one hundred and five feet, his said third 33 1-3 feet is to front on the pike and joins the lot herein willed to my son, Lewis J. Klette. I further will to my said son, George D. Klette and to his children fifty shares of my stock in the Independence & Colemansville Turnpike Company.''

It is the contention of the plaintiffs that their father took only a life estate in the property in question, and upon his death a fee vested in them. Defendant contends that George D. Klette and his children, the plaintiffs, Jarvis Klette and Fred Klette, took a joint estate in fee simple. The chancellor held that George D. Klette took only a life estate in the property in question, and that defendant, therefore, as a devisee of George D. Klette, acquired no estate therein. Judgment was entered accordingly, and defendant appeals.

In the consideration of the question, we deem it necessary to set out the material parts of Asa G. Klette's will. After providing for the payment of his debts in the first clause of the will, we have the following:

''Second. I will and bequeath to my beloved wife, Sarah Klette, for and during her natural life, sixteen and one-half acres and thirty-one poles of land, being that portion of my home farm in Kenton County, Kentucky, and bounded and described as follows. (Here follows description.)''

''Third. I also give and bequeath to my said wife, Sarah Klette, for and during her natural life, fifty acres of land in Kenton County, Kentucky, being a portion of my farm lying on the waters of DeCoursey Creek in said county, said fifty acres is bounded as follows. (Here follows description.)''

''Fourth. I give and bequeath to my son, Lewis J. Klette and to his children the following described real estate lying in Kenton County, Kentucky, being a portion of my home farm and bounded thus. (Here follows description.)''

"Fifth. I also will and bequeath to my said son, Lewis J. Klette, the one-third part of a lot of land which I now own in the town of South Covington, Kenton County, Kentucky. (Here follows description.) This part of my said lot my son can dispose of for his own use and benefit. I also give and devise to my said son, Lewis J. Klette, and his children, fifty shares of the stock which I now own in the Independence & Colemansville Turnpike Company."

"Sixth. I will and devise to my son, George D. Klette, and his children, the following real estate in Kenton County, Kentucky, viz.: (Here follows description.)"

"Seventh. (Clause in question) I also will and bequeath to my said son, George D. Klette and to his children at the death of my wife, Sarah Klette, the one-half of the fifty acres herein willed to her during her life, and it is my will that the said 50 acres at the death of my wife, be so divided that George D. Klette and his children will get the 25 acres herein willed to them and I further will and give to my said son, George D. Klette in his own right one-third part of a lot which I now own in the town of South Covington, Kenton County, Kentucky. (Here follows description.) I further will to my said son, George D. Klette and to his children, fifty shares of my stock in the Independence & Colemansville Turnpike Company."

"Eighth. I will and bequeath to my daughter, Sarah A. Rice and to her children, the following described real estate: (Here follows description.) I further will and bequeath to my said daughter, Sarah A. Rice and to her children to take at the death of my wife, Sarah Klette, the one-half of the 50 acres herein willed to her during her life, and it is my will that at the death of my said wife, said 50 acres be so divided that my said daughter, Sarah A. Rice and her children get the half joining the 28½ acres herein willed to them."

"Ninth. I will and bequeath to my son, Edward B. Klette, one hundred acres of the land of my farm of one hundred and sixty acres in the County of Randolph and State of Indiana, I also will and bequeath to my said son, Edward B. Klette, one-third part of a lot which I own in South Covington, Kenton County; and his said third of said lot is to front 33 1-3 feet on the pike and to join the lot herein willed to my son, George D. Klette.

I further will to my said son, Edward B. Klette, fifty shares of my stock in the Independence & Colemansville Turnpike Company, and it is further my will that in the event that my said son, Edward B. Klette should die without issue or without lineal descendants and still owning said estate that all of the estate herein willed or bequeathed to him, shall go to, and be equally divided between his two brothers and sisters, Sarah A. Rice, and should either of his said brothers or sister be dead, then their children of such of them as may be dead shall take their father's or mother's part.''

"Tenth. I will and bequeath to my daughter, Mary E. Durr for her life and after her death to her heirs, a house and lot in California in Kenton County, Kentucky. (Here follows description.) I also will and devise to my said daughter, Mary E. Durr, for her life and at her death to her children a certain tract of land in Kenton County, Kentucky, containing. thirty-seven acres adjoining the said California lot. (Here follows description.) And I further will and bequeath to my said daughter, Mary E. Durr, the seven hundred dollars which is due and owing to me from the estate of her former husband, Ezra F. Armstrong, deceased.''

"Eleventh. I will and bequeath to my daughter, Udora Klette all of a certain tract or parcel of land in Kenton County, Kentucky, for her life, viz.: (Here follows description.) And it is my will that at the death of my said daughter, Udora Klette, said land shall go to and vest in the heirs of her body and if none such, then said lands to be sold and the proceeds divided according to law and it is my further will that at the death of my wife, the sixteen acres and one-half and thirty-one poles of my home farm given to my wife, shall go and vest in my said daughter, Udora Klette in the same way and at her death to be disposed of in the same manner as the other tract herein given to her is to go.''

"Twelfth. I will and direct that my executor herein after named shall sell the tract of about seventeen acres which I now own on DeCoursey Creek and also sell the two lots I own in Independence and also to sell the sixty-four acres of my land in Randolph County, Indiana, not herein disposed of, and give to my wife, Sarah Klette, one-third of the proceeds of said sales and the other two-thirds to be equally divided among all of my children. It is my will and I hereby give to my son, Ed-

ward B. Klette, the right to designate off of what part of the Indiana land, the said sixty-four acres shall be sold."

"Thirteenth. It is my will that after all of the legacies are taken as herein set out and given, that the surplus of my estate if any shall go one-third to my wife and the remainder be equally divided among all of my children living and if any be dead then their part to their children if any."

It will be observed that by the 7th clause of the will in question, the property involved in this controversy is bequeathed "to my said son, George D. Klette, and to his children." This language brings the case within the rule laid down in one of three lines of cases. One class of cases is to the effect that the parent takes a joint estate in fee simple with his children then born or thereafter to be born. Turner v. Patterson, 5 Dana, 295; Cessna v. Cessna's Admr., 4 Bush, 516; Powell v. Powell, 5 Bush, 620, 96 Am. Dec., 372; Bell v. Kinneer, 101 Ky., 271, 40 S. W., 686, 72 Am. St. Rep., 410. Another class of cases is to the effect that the parent takes merely a life estate, with remainder to his children. Fletcher v. Tyler, 92 Ky., 145, 17 S. W., 282, 36 Am. St. Rep., 584; Smith v. Upton, 13 S. W., 721, 12 Ky. L. Rep., 28; Davis v. Hardin, 80 Ky., 672. The other class of cases is where the word "children" is used in the sense of heirs. This construction is adopted only in those cases where upon a consideration of the whole will it is evident that the words were used as words of limitation and not of purchase. Childers v. Logan, 65 S. W., 124, 23 Ky. L. Rep., 1239; Moran v. Dillehay, 8 Bush, 434; Hood v. Dawson, 98 Ky., 285, 33 S. W., 75; Lachland's Heirs v. Downing's Exrs., 11 B. Mon., 32; Williams v. Duncan, 92 Ky., 125, 19 S. W., 330.

As there is nothing in the language of the will to indicate that the word "children" is used in the sense of heirs, but on the contrary the testator plainly indicates what part of his devised estate is given to George D. Klette absolutely, or in his own right, it follows that the estate devised to George D. Klette and his children comes within the first or second class of cases above referred to. Under the more recent decisions of this court, where there is nothing in a deed or will to show a contrary purpose, the rule is to hold an estate deeded or devised to a man and his children or to a woman and her children as a life estate to the first taker, with remainder to the children. Hall v. Wright, 121 Ky., 16, 87

S. W., 1129; Brumley v. Brumley, 89 S. W., 182, 28 Ky. L. Rep., 231. The reason given for this rule of construction is that if ·a joint estate is given, the quantity or interest each takes will remain uncertain, and shift upon the birth of each after-born child, and that a testator's intention can be best carried out by giving to the son or daughter a life estate, with remainder to his or her children; thus keeping the estate intact for the benefit of them all. With these principles in view, let us examine the will in question, and to this end· consider the entire will, including the other devises. By the first clause he devises to his wife certain land "for and during her natural life." By the second clause he devises other land to her "for and during her natural life." By the third clause he devises certain other lands to his wife "for and during her natural life." By the fourth clause, he devises certain land to Lewis J. Klette and his children. By the fifth clause he devises a certain lot of land to Lewis J. Klette, with the right to dispose of it for his own use and benefit. By the same clause he gives to Lewis J. Klette and his children·fifty shares of stock. By the sixth clause, he devises to George D. Klette and his children certain real estate. By the seventh; clause, the one in question, he devises to George D. Klette and his children one-half of the fifty acres, willed to his wife during her life. He further directs that at the death of his wife the land be so divided that George D. Klette and his children will get the twenty-five acres therein willed to them. He further gives to George D. Klette in his own right one-third of a certain lot. He also gives to him and to his children fifty shares of stock. In the eighth clause he devises to Sarah A. Rice and her children certain real estate. By the ninth clause he gives to Edward B. Klette certain property, with the provision that should he die without issue or lineal descendants while still owning said estate, it shall be divided between his two brothers and his sister, etc. In the tenth clause, he devises to Mary E. Durr for her life and after her death to her heirs, certain real estate. Another tract of land in the same clause is devised to Mary E. Durr for her life, and at her death to her children. By the 11th clause, he devises certain property to Udora Klette, with the further provision that at her death it shall vest in the heirs of her body, and if none such, the land shall be sold and the proceeds divided ac-

cording to law. By the 12th clause he gives one-third of the proceeds of certain lands to his wife absolutely, and directs that the other two-thirds be equally divided among all his children. By the 13th clause, he directs the residue of his estate to be divided, one-third to his wife, the remainder equally among all of his children. It will be observed that in four different instances the testator devises certain property to his wife and daughters for life. He gives to his son, Edward, a defeasible fee. He also gives to Edward and George certain property absolutely. By the eleventh and twelfth clause, he gives to his wife and all of his children certain property absolutely. It is rare that you see in one will as many different kinds of estates devised. When the testator wanted to give a life estate, he knew exactly what language to employ for that purpose; when he wanted to create a fee, he had no difficulty in selecting appropriate terms; and when he wanted to create a defeasible fee, the language employed is apt and precise. If the testator had not used in the will the precise terms necessary to create the charatcer of estate which he intended to devise, it might be said that some uncertainly existed in the clause under consideration, and it should therefore be construed as intending to bestow a life estate upon George D. Klette. But when the testator, in at least four different paragraphs in the same will had used just the precise words necessary to create a life estate it can hardly be said that he abandoned the words, whose meaning he plainly understood, although intending to give a similar estate. It does not appear that he used the proper terms by mere inadvertance. The property in question is a part of the same property which he devised to his wife for and during her life, and it is hardly probable that he would have abandoned the words necessary to create a life estate if he intended, upon the expiration of the first life estate, to create a second life estate, with remainder over, in the same property. This conclusion is strengthend by the devise to Udora Klette of 16½ acres, devised by clause two to his wife for life. In that instance he used language plainly creating a life estate in his daughter. Naturally, if he had contemplated giving George D. Klette a mere life estate at the termination of the widow's interest, he would have used language as plainly implying his purpose as that used in disposing of the remainder in the other property devised to his wife for life. Furthermore, the clause in question provides

that the 50-acre tract shall be so divided that George D. Klette and his children will get the 25 acres "herein willed to them." This division is to take place at the death of Sarah Klette. The language clearly indicates that the testator intended that George D. Klette and his children should have equal rights in the property in question upon the death of Sarah Klette. We therefore conclude that George D. Klette and his children took a joint estate in fee simple, and Sarah Ann Rice, devisee of George D. Klette, acquired by his will a one-third interest in the property in question.

Judgment reversed and cause remanded with directions to enter judgment in conformity with this opinion.